THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LARRY WHITE, Also Known as LARRY METZ, Respondent.

First Department, February 26, 1976

*Judith K. Rubinstein* of counsel *(Peter L. Zimroth* with her on the brief; *Robert M. Morgenthau, District Attorney),* for appellant.

*Jerald Rosenthal* for respondent.

KUPFERMAN, J. The indictment, filed January 1972, is to the effect that the defendant shot and killed someone in November, 1971 in an apartment in New York County and at the same time robbed other occupants of the apartment. Defendant then fled to Pennsylvania where he killed a police officer and was convicted of murder.

In 1972, the New York County District Attorney's office communicated several times with the office of the District Attorney in Allegheny County of Pennsylvania and received the information that Pennsylvania would not release the defendant until his murder trial was completed. In July of 1972, there was a letter from the Allegheny County District Attorney's office that the defendant had been convicted of murder there and was awaiting sentence and a decision on his motion for a new trial. The motion for a new trial was granted. There were a number of letters and phone calls back and forth with the Pennsylvania authorities reiterating their refusal to deliver the defendant to New York until a ruling of the Pennsylvania Supreme Court on their appeal from the granting of a new trial or until defendant was retried. The Supreme Court of Pennsylvania granted a new trial, *Commonwealth v White* (327 A2d 40), and a petition for a writ of certiorari was filed by the Commonwealth of Pennsylvania with the United States Supreme Court. The petition of Pennsylvania for this writ was denied on May 12, 1975 *(Pennsylvania v White,* 421 US 971) and thereafter the defendant was retried in Allegheny County.

Because there would be substantial delay pending the application for certiorari, in February, 1975 the Pennsylvania authorities agreed to release the defendant to New York, and he was arraigned on March 6, 1975, the day after his return, and subsequently he moved to dismiss the New York indictment with the contention that he had been denied a speedy trial. The dismissal was granted on the ground that the People failed to take formal steps to bring the defendant to

New York pursuant to the Uniform Criminal Extradition Act or Agreement on detainers (CPL 580.10).

During all this period there was continuing communication between the office of the District Attorney of New York County and the Pennsylvania authorities.

The People must establish sound cause for the delay, *People v Wallace* (26 NY2d 371). They have more than met their burden in the delineation of the facts in this case. No rote formalism is required. As Judge BREITEL (now Chief Judge BREITEL stated: "Refusal by another jurisdiction to surrender the defendant would, of course, be an excuse. All that the People would have to do is make the request, sincerely, for the surrender—a letter would do." *(People v Winfrey,* 20 NY2d 138, 144.)

While the defendant's incarceration in another jurisdiction may not in itself be an excuse for delay *(People v Rodriguez,* 45 AD2d 41; Travis H. D. Lewin, Criminal Procedure, 26 Syracuse L Rev 65, 98 n 165), in our case we have letters and phone calls and the refusal by the Pennsylvania authorities pending the pursuit of their own criminal prosecution. Under the analysis in *Barker v Wingo* (407 US 514) good cause was shown for the delay.

The order of the Supreme Court, New York County (ROSENBERGER, J.) entered August 1, 1975, which granted defendant's motion to dismiss the indictment on the ground that he had not been afforded a speedy trial, should be reversed on the law and the facts, and the indictment reinstated.

MARKEWICH, J.P., KUPFERMAN, LUPIANO, SILVERMAN and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on August 1, 1975, unanimously reversed, on the law and the facts, the motion denied, and the indictment reinstated.